IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOSEPH M. STILL BURN CENTERS,  *
INC.,                          *
                               *
          Plaintiff,           *
                               *
     v.                        *          CV 109-34
                               *
AMFED NATIONAL INSURANCE       *
COMPANY and BLACK JACK WELL    *
SERVICE, INC.,                 *
                               *
          Defendants.          *

---

**ORDER**

---

Before the Court in this diversity action is AmFed
National Insurance Company's ("AmFed") and Black Jack Well
Service, Inc.'s ("Black Jack") (collectively "Defendants")
motion for summary judgment, filed on August 28, 2009.
(Doc. no. 34.)   Plaintiff Joseph M. Still Burn Centers,
Inc. ("JM Still") timely responded to this motion (doc. no.
36), and rebuttal briefs were subsequently filed by both
parties (doc. nos. 42 & 43).   Upon consideration of the
record evidence, the arguments of counsel, and the relevant
law, Defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

In Mississippi, on August 7, 2006, AmFed, a Mississippi insurer, issued an insurance policy for workers' compensation and employer liability coverage to Black Jack, a Mississippi corporation that services gas and oil wells. (Wilson Aff. ¶¶ 2, 4; Hillhouse Aff. ¶¶ 2, 4-5.) The policy provided coverage from October 14, 2006, to October 14, 2007. (Wilson Aff. ¶ 4.) The insurance policy, in part, read as follows: "[AmFed] will pay promptly when due the benefits required of [Black Jack] by the workers compensation law." (Doc. no. 31, Ex. 1 at 19.) "Workers Compensation Law" was defined as the "workers or workmen's compensation law and occupational disease law of each state or territory named in item 3.A. of the information page." (Id.) Item 3.A. of the "Information Page" contained the name of a single state—Mississippi. (Id. at 2.)

On June 6, 2007, Drew Kossum, a Black Jack employee at the time, was seriously burned and otherwise injured in a work-related accident within Mississippi. (Wilson Aff. ¶¶ 6-7.) Mr. Kossum was originally taken to Southwest Mississippi Regional Medical Center ("SMRMC") in McComb, Pike County, Mississippi, for treatment (id. ¶ 8), before being transported, at the direction of SMRMC and JM Still,

to the Joseph M. Still Burn Unit in Augusta, Georgia (doc. no. 36, Ex. 3; doc. no. 41, Ex. 1).

There is no evidence that AmFed or Black Jack had any contact with Plaintiff JM Still prior to Mr. Kossum's departure from Mississippi, although AmFed ultimately did pay, at least in part, for Mr. Kossum's flight. (Doc. 36, Ex. 3 at 7-11.) According to AmFed, at 12:11 p.m. on June 6, 2007, AmFed received, by facsimile transmission, a Mississippi Workers' Compensation "First Report of Injury" form informing it that a Black Jack employee had been involved in an accident. (Hillhouse Aff. ¶ 9.) An AmFed representative subsequently called SMRMC and was told arrangements had already been made for Mr. Kossum to be transported by air to JM Still in Augusta, Georgia. (Id. ¶ 10.) The AmFed representative requested that Mr. Kossum be transferred, instead, to the University of Alabama at Birmingham Hospital, and began making calls to arrange for the transfer. (Id.) When an AmFed representative called and spoke with the SMRMC nurse again, however, the nurse stated that arrangements had already been made and, furthermore, the emergency room doctor would only agree to a transfer to JM Still. (Id.)

At approximately 6:30 p.m., eastern daylight time, Mr. Kossum was admitted to JM Still with burns covering over

sixty-percent of his body. (Doc. no. 33, Ex. 1; Burroughs Aff. ¶ 6.) JM Still's admittance sheet lists Mr. Kossum as the "Guarantor" and the "Guarantor Employer" is listed as "Unknown." (Doc. no. 33, Ex. 1.) Following Mr. Kossum's admittance to JM Still, AmFed assigned a case manager and adjuster for Mr. Kossum's workers' compensation claim, provided JM Still with contact and claim information, and provided JM Still with medical utilization forms,[1] which were supplied to assist JM Still in providing care that was approved by AmFed. (Hillhouse Aff. ¶ 17; Bennett Aff. ¶ 7.) Over the course of a few months, several meetings occurred between AmFed and JM Still, including a meeting on June 13, 2007, and a telephonic conference on July 31, 2007, at which the parties discussed the fees related to Mr. Kossum's treatment, but the parties failed to come to an agreement. (Hillhouse Aff. ¶ 14.)

After JM Still completed Mr. Kossum's treatment, it submitted appropriate medical records and bills to AmFed. (Bennett Aff. ¶ 8.) AmFed responded by submitting payments that exceeded the amounts required under both Mississippi's

---

[1] The medical utilization forms are generally used by AmFed to review and, where proper, approve the appropriateness of care, duration of treatment, and necessity of proposed treatment. (Hillhouse Aff. ¶ 15.) The forms state the following in regard to payment by AmFed: "[T]his opinion is based on physician review of provided medical records and does not guarantee coverage or payment of claims. Compensability is the decision of the claims adjuster." (Id.)

and Georgia's applicable workers' compensation medical fee schedules. (Hillhouse Aff. ¶ 19.) These payments, however, fell short of the amount billed, which was based upon "the usual and customary reimbursement rates for burn surgery and medical treatment in Augusta, Georgia." (Burroughs Aff. ¶¶ 10-11.) After AmFed failed to pay the amount JM Still demanded, JM Still filed suit in the Superior Court of Richmond County against AmFed and Black Jack. On March 11, 2009, Defendants removed the action to this Court, pursuant to 28 U.S.C. § 1332. (Doc. no. 1.)

Plaintiff, in its amended complaint, asserts the following causes of action: 1) breach of an implied contract, *quantum meruit*, under O.C.G.A. § 9-2-7; 2) breach of contract as to a third party beneficiary, under O.C.G.A. § 9-2-20; and 3) promissory estoppel, under O.C.G.A. § 13-3-44(a). (Am. Compl. ¶¶ 25-35.) Each of these causes of action shall be addressed in turn.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing

substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must

first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-

movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

The Clerk has given the non-moving party notice of the summary judgment motions and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. no. 35.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the Defendants' motion is ripe for consideration.

## III. DISCUSSION

### A. Breach of Express Contract

While it is unclear whether Plaintiff is asserting a claim for breach of an actual contract, to the extent Plaintiff's amended complaint asserts such a claim, Defendants have moved for summary judgment. (Doc. no. 33 at 8.) Defendants assert that "it is undisputed that there

is no actual contract between Plaintiff and Defendants."
(Id.) The Court agrees.

Count One of Plaintiff's amended complaint alleges "Breach of Contract," under which Plaintiff alleges, among other things, that Defendants have "wrongfully refused to make full payment for the medical services provided to its employee as demanded upon request," which, according to Plaintiff, constitutes "breach of [Defendants'] agreement to pay for medical services of its insured." (Am. Compl. ¶¶ 26-28.) Nowhere in Plaintiff's amended complaint, however, is it asserted that an actual contract has ever existed directly between Plaintiff and either of the Defendants. Even if Plaintiff had made such an assertion, there is no evidence in the record to support such a claim. Plaintiff appears to implicitly accept that no actual contract exists by choosing not to address the issue in its responses in opposition to Defendants' motion for summary judgment. For these reasons, to the extent Plaintiff is asserting a claim for breach of an actual contract, Defendants' motion for summary judgment is **GRANTED**.

### B. *Quantum Meruit*

Plaintiff asserts in its amended complaint that Defendants' "refusal to make complete payment to the

Plaintiff is a Breach of an Implied Contract, *quantum meruit*, under O.C.G.A. § 9-2-7." (Am. Compl. ¶ 27.) Georgia Code Section 9-2-7 states in part: "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." Based upon this statute, the Supreme Court of Georgia has established the following essential elements regarding a claim for *quantum meruit*: "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered." Amend v. 485 Props., 280 Ga. 327, 329 (2006).

"Quantum meruit is not available when there is an express contract; however, if the contract is void, is repudiated, or can only be implied, then quantum meruit will allow a recovery if the work or service was accepted and if it had value to the *recipient*." Watson v. Sierra Contracting Corp., 226 Ga. App. 21, 28 (1997) (emphasis added). Under Georgia law, for any claim based on *quantum meruit*, a plaintiff must show that it performed "services valuable *to the defendant* and that the defendant accepted those services." Langford v. Robinson, 272 Ga. App. 376,

379 (2005) (emphasis in original). "While the question of reasonable value of services rendered generally lies with the jury when such value is disputed, the Court must first decide as a matter of law whether there exists a right to recover at all." Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc., 44 F. Supp. 2d 1348, 1358 (N.D. Ga. 1998) (citation omitted).

Furthermore, "[W]here the facts conclusively show by plain, palpable and undisputed evidence the value and benefit to the recipient of services rendered, such case properly may be resolved on summary judgment." Sosebee v. McCrimmon, 228 Ga. App. 705, 707. Summary judgment is also proper in *quantum meruit* cases when a plaintiff's "claim for damages is remote or speculative." Morrison v. Exxon Mobil Corp., No. 1:03-cv-140, 2007 WL 988862, at *6 (M.D. Ga. Mar. 29, 2007). Finally, "[t]o recover in *quantum meruit*, the plaintiff must show that he has not already been compensated the reasonable value for the goods or services he conferred on the defendant." Nelson & Hill, P.A. v. Wood, 245 Ga. App. 60, 64 (2000).

Defendants contend, in their motion for summary judgment, that the medical services performed by Plaintiff were not for their benefit, but rather were for the benefit of someone else, and, therefore, Defendants should not be

held liable under a theory of *quantum meruit*. (Doc. no. 33 at 9-10.) Plaintiff counters, "Obviously, the benefit of the medical services agreement AmFed made with [JM Still] was the performance of medical treatment to care for Mr. Kossum, which AmFed authorized." (Doc. 36 at 14.) According to Plaintiff, "AmFed accepted the medical services [JM Still] rendered to [AmFed's] insured's employee" by participating throughout the treatment process and paying the "amount required." (Id. at 10-11.) Plaintiff also argues that, "AmFed's partial reimbursement to [JM Still] for the Kossum medical services was a direct consequence of [Defendants'] implied contract." (Id. at 11.)

At the outset, the Court fails to see how Plaintiff "obviously" conferred anything upon any party other than Mr. Kossum. By all appearances, Mr. Kossum received Plaintiff's medical services and the benefits from those services, and AmFed merely paid for them based upon its belief that it had a statutory obligation to do so under Mississippi's workers' compensation law. (Hillhouse Aff. ¶¶ 18-19.) Furthermore, Plaintiff fails to cite—and the Court has been unable to find—a single Georgia case supporting its contention that the provision of medical services to a patient is sufficient to support a *quantum*

*meruit* claim against the patient's employer or the employer's workers' compensation insurer.[2] Plaintiff also largely fails to provide the Court with any clear explanation as to how or why the medical services it provided to Mr. Kossum were beneficial or valuable to Defendants. Moreover, Plaintiff never specifically identifies what it is alleging Defendants "received" when Plaintiff provided medical services to Mr. Kossum.[3]

While the Court appreciates the fact that, in Georgia, "the question of reasonable value of services rendered generally lies with the jury when such value is disputed," Synergy, 44 F. Supp. 2d at 1358 (citation omitted), a party cannot merely assert a claim for *quantum meruit* against a defendant, after conferring services upon a *third-party*, and assume a jury question automatically arises regarding the value of the services to that defendant. "[T]he Court must first decide as a matter of

---

[2] The Court suspects that the limited case law on this issue is due, at least in part, to the fact that most parties in Plaintiff's position bring suits like these before the appropriate workers' compensation commission.

[3] As stated above, Georgia courts have consistently held that, under a *quantum meruit* theory, a plaintiff must show that the services had value to the <u>recipient</u>. See Watson, 226 Ga. App. at 28 ("Under O.C.G.A. § 9-2-7, this Code section provides an action for *quantum meruit* where services were rendered and materials were furnished, and which were accepted by and valuable to the <u>recipient</u> . . . ."); see also Diegert v. Cedarbrook Homes, Inc., 267 Ga. App. 264, 265 (2004) ("Proof of 'the reasonable value of services <u>rendered to and accepted by</u> a defendant is an element essential to recovery on a quantum meruit basis.'") (emphasis added)(citation omitted).

law whether there exists a right to recover at all." Id. at 1359. In this case, the Court finds no such right exists based upon the evidence and arguments presented.

This is not a typical *quantum meruit* case in which services were clearly conferred directly upon the party being sued and the central issue is whether those services had value or constituted a benefit to the defendant.[4] Here, medical services were directly performed for and conferred upon Mr. Kossum, not Defendants, and no cognizable, let alone measurable, benefit or value to Defendants has been identified by Plaintiff.

Attempting to manufacture a benefit or value where no clear one exists, Plaintiff argues that "a significant benefit flowed to the Defendant AmFed for it could demonstrate to the State of Mississippi, the Employee (Mr. Kossum), and the Employer (Black Jack), that AmFed fulfilled both its statutory and insuring obligations to provide healthcare to Mr. Kossum."[5] (Doc. no. 36 at 14.) Even assuming Plaintiff's contention had any merit or basis

---

[4] See e.g., Brumby v. Smith & Plaster Co. of Ga., 123 Ga. App. 443 (1971) (addressing contractor's action against homeowner for work performed on home).

[5] Plaintiff cites Miss. Code Ann. § 77-3-15 in support of its argument. (Doc. no. 36 at 14.) The Court assumes Plaintiff was intending to refer to Miss. Code Ann. § 71-3-15, which states: "The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require."

14

under Georgia law[6] and this Court could find that Plaintiff has demonstrated that a genuine issue of fact exists as to whether Defendants received valuable services, Plaintiff's claim still fails because it has "already been compensated the reasonable value for the . . . services [rendered]." Nelson & Hill, 245 Ga. App. at 64. The same statute Plaintiff cites in support of an alleged benefit mandates that the Mississippi Workers' Compensation Commission "establish an appropriate medical provider fee schedule, medical cost containment system and utilization review." Miss. Code Ann. § 71-3-15.

Mississippi's Workers' Compensation Medical Fee Schedule states the following regarding the reimbursement for out-of-state medical services:

> Reimbursement for out-of-state services shall be based on one of the following, in order of preference: (1) the workers' compensation fee schedule for the state in which services are rendered; or (2) in cases where there is no applicable fee schedule for the state in which services are rendered, or the fee schedule in said state excludes or otherwise does not provide reimbursement allowances for the services rendered, reimbursement should be paid at the usual and customary rate for the geographical area in which the services are rendered.

---

[6] Plaintiff fails to cite a single case in support of its asserted proposition—specifically, that the incidental discharge of a statutory obligation in a foreign jurisdiction, through the provision of medical services to a third party, entitles a medical provider to compensation from an employer or a workers' compensation insurer under a *quantum meruit* theory.

(Doc. no. 36, Ex. 1 at 20.)

Regarding this provision, Plaintiff argues that, since Georgia's Workers' Compensation Medical Fee Schedule would not apply to this claim—had it been brought in Georgia—this Court should look to subsection (2). (See Doc. no. 36 at 3-5.) The Court finds nothing in the above-language to support Plaintiff's position. By the plain text of the rule, Mississippi simply looks to the medical fee schedule of the foreign state to determine the reasonable rate of reimbursement for its own state when, in a workers' compensation case, services have been rendered by an out-of-state medical provider. There is nothing in the language of Mississippi's Workers' Compensation Medical Fee Schedule to indicate that the rate of reimbursement for out-of-state services is contingent upon whether a foreign state's medical fee schedule would apply in that foreign state. So, to the extent Defendant AmFed benefited from the discharge of a statutory obligation under Mississippi law, the undisputed evidence[7] shows that it has already paid

---

[7] While Plaintiff disputes the applicability of Georgia's medical fee schedule (doc. no. 36 at 3-4), Plaintiff does not dispute the fact that, if the rates listed in Georgia's medical fee schedule apply here, Defendant AmFed paid in full.

the reasonable value[8] for Plaintiff's services. (See Hillhouse Aff. ¶ 19 ("[AmFed] has paid more than what would have been required under either Mississippi's or Georgia's applicable workers' compensation medical fee schedules.")).

Furthermore, to the extent Plaintiff might respond by arguing that some other benefit or value exists,[9] Plaintiff's claim for damages would likely be found to be remote and speculative and summary judgment would still be proper. See Morrison, 2007 WL 988862 at *6 ("[S]ince it is Plaintiff's burden to establish that he suffered a recoverable injury, 'where [his] claim for damages is remote or speculative, summary judgment for the defendant is appropriate.'"); see also The Hip Pocket, Inc. v. Levi Strauss & Co., 144 Ga. App. 792, 792 (1978) ("Where

---

[8] The Court finds it worth noting that, under Georgia law, the Georgia Workers' Compensation Board is required to publish "a list by geographical location of usual, customary, and reasonable charges for all medical services provided under the applicable code section." O.C.G.A. § 34-9-205. This statute explicitly states, "Fees within this list shall be presumed reasonable." Id.

[9] Plaintiff has neither argued this point nor provided evidence to support the existence of any benefit or value beyond the relief of a statutory obligation to pay for medical services under Mississippi law. Plaintiff's response to Defendants' motion includes largely conclusory assertions that the "obvious" benefit of the medical service agreement AmFed allegedly made with Plaintiff was the performance of medical treatment to care for Mr. Kossum. (Doc. no. 36 at 14.) In support of this conclusory assertion, Plaintiff merely provides evidence that AmFed paid in part and evidence showing that the prices billed represent the usual and customary charges for Mr. Kossum's health care. (Burroughs Aff. ¶ 10.) Plaintiff, however, fails to explain how or why these charges represent the value or benefit to AmFed or Black Jack. See Zampatti v. Tradebank Int'l Franchising Corp., 235 Ga. App. 333, 340 (1998) ("The measure of damages under *quantum meruit* or unjust enrichment is based upon the benefit conferred upon the defendant and not upon the cost to render the service or cost of the goods.").

plaintiff's claim for damages is remote or speculative, summary judgment for the defendant is appropriate.").

For example, here, any arguable commercial benefit or value to AmFed is attenuated, at best. A Florida district court has already pointed out, in Adventist Health Sys. v. Med. Sav. Ins. Co., 2004 U.S. Dist. LEXIS 30976, Case No. 6:03-cv-1121, at *20 n.8 (M.D. Fla. Mar. 8, 2004),

> Though [Plaintiff] does not carefully analyze what benefits redound to insurers when their insureds are treated, the Court supposes that these benefits could only be highly abstract. It may, for example, benefit an insurance company when its insureds are treated because knowledge that such treatment occurs might induce prospective customers to purchase insurance policies. . . . [but this] is a "positive externality," meaning an incidental or side-effect benefit for which compensation is not required." . . . If positive externalities were compensable [a hospital] might have a valid claim against everyone every time it vaccinated a child.

If Plaintiff is in fact seeking reimbursement for the type of "positive externality" described above, such claim fails because, *based upon what has been presented to the Court*, Plaintiff's claim for damages is remote and speculative.

Finally, the Court finds it important to note that *quantum meruit* is an equitable doctrine. See Nextel S. Corp. v. R.A. Clark Consulting, Ltd., 266 Ga. App. 85, 87 (2004) (noting *quantum meruit* is an equitable doctrine that literally means "as much as he deserves"). Thus,

"[a]lthough the remedy . . . was developed as part of the common law of contracts to avoid unjust enrichment under a contract implied by law, equitable considerations influence the determination of whether recovery is warranted in a given case." 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:1 (4th ed. 1993 & Supp. 2009).

The evidence shows that, from the moment Mr. Kossum was admitted to the burn center, Plaintiff was aware that it was dealing with a workers' compensation injury,[10] and, as a result, was aware, or at least should have been aware, that it would likely be paid by a workers' compensation insurer or an employer. The reasonable, expected amount equals the reimbursement amounts set forth under the laws of Georgia and/or Mississippi. There is no evidence in the record demonstrating that Defendants ever made any representation that they would be willing to pay anything more than what was required of them by Georgia and/or Mississippi workers' compensation law. Moreover, there is no evidence in the record showing Plaintiff has ever been given any reason to believe that it would receive payments from AmFed, a workers' compensation insurer, that exceeded

---

[10] See JM Still Admission Form, Doc. no. 33, Ex. 1 (referencing "workers comp - burn" and noting that accident was employment related).

the reimbursement amounts set forth under workers' compensation law.

Yet, now, JM Still wishes to charge AmFed its "usual and customary" rates for the medical services rendered (Burroughs Aff. ¶ 10), rates that exceed the reimbursement amounts set forth in the medical fee schedules of both Georgia and Mississippi (Hillhouse Aff. ¶ 19; Burroughs Aff. ¶ 11). This Court is unwilling to allow Plaintiff to circumvent the reimbursement rates set forth in Mississippi's and Georgia's workers' compensation fee schedules without any evidence of an agreement that payment was not to be based upon either of these schedules. Indeed, no reasonable juror could find that Defendants were unjust for failing to pay Plaintiff anymore than what they were obligated to pay under workers' compensation law.

In light of the foregoing, Defendants' Motion for Summary Judgment on Plaintiff's *quantum meruit* claim is hereby **GRANTED**.


## C. Third-Party Beneficiary Claim

At the outset, the parties appear to dispute which state's laws apply to this claim, at least for purposes of

standing.[11] Regardless, the Court finds that no matter what state law applies—either Georgia's or Mississippi's— Plaintiff's claim fails as a matter of law. Under both Georgia and Mississippi law, an intended third party beneficiary of a contract is only entitled to enforce the promises provided by the terms of the contract. See Am. Water Serv. USA v. McRae, 286 Ga. App. 762, 763 (2007) ("The rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto."); Burns v. Wash. Sav., 251 Miss. 789, 796 (1965) ("[T]he right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.").

In this case, Plaintiff contends that it is the third party beneficiary of the insurance policy issued by AmFed to Black Jack. The plain text of the insurance policy reads as follows: "[AmFed] will pay promptly when due the benefits required of [Black Jack] by the workers

---

[11] Defendants argue that Mississippi law applies. (Doc. no. 33 at 10-11.) For purposes of Plaintiff's third party beneficiary claim, Plaintiff does not appear to take a position as to which state's laws apply to the determination of standing. Nevertheless, Plaintiff fails to point to a single case or statute, in any state, declaring that a medical provider should be considered a third party beneficiary to a contract between an employer and a workers' compensation insurer.

compensation law."[12]   (Doc. no. 31, Ex. 1 at 19.)   Thus,
even if Plaintiff was considered a third party beneficiary,
Defendant AmFed was only required to pay for "the benefits
required" of Black Jack under workers' compensation law,
which it did in this case.

The transactions at issue in this lawsuit involve only
two states, Mississippi—the state where the insurance
policy was issued, the Defendants are incorporated, and Mr.
Kossum was injured (Wilson Aff. ¶¶ 2, 7; Hillhouse Aff. ¶¶
2, 5)—and Georgia—the state in which Plaintiff rendered
medical services.   There is no evidence in the record to
support, and Plaintiff does not contend, that any benefits
are required under Georgia workers' compensation law.[13]
Therefore, the only "benefits required" in this instance
are the benefits required under Mississippi's workers'

_____

[12] "Workers' compensation law" is defined in the policy as the law
of Mississippi.   (Doc. no. 31, Ex. 1 at 2)   The Court recognizes,
however, that the policy also mandates payment of "the benefits
required [of the insured] by the workers compensation law of any
[other] state" pursuant to certain conditions (see id., Ex. 1 at 9.);
this provision, however, is not applicable in this case.

[13] O.C.G.A. § 34-9-242 states the following regarding the
applicability of Georgia's workers' compensation law to out-of-state
injuries: "In the event an accident occurs while the employee is
employed elsewhere than in this state . . . the employee or his
dependants shall be entitled to compensation if the contract of
employment was made in this state and if the employer's place of
business or the residence of the employee is in this state unless the
contract of employment was expressly for service exclusively outside of
this state.   If an employee shall receive compensation or damages under
the laws of any other state, nothing contained in this Code section
shall be construed so as to permit a total compensation for the same
injury greater than is provided for in this chapter."

compensation law. As set forth above, Mississippi's Workers' Compensation Medical Fee Schedule states that "reimbursement for out-of-state services shall be based on . . . the workers' compensation fee schedule for the state in which services are rendered." As this Court has already stated, Plaintiff has been paid more than what is required under both Georgia's and Mississippi's workers' compensation medical fee schedules. (Hillhouse Aff. ¶ 19; see supra pp. 16-17.)

Having determined that there is no genuine issue of material fact as to whether Defendant AmFed has fully complied with the terms of the insurance contract, Defendants' Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's third party beneficiary claim.

### D. Promissory Estoppel

In Count Two of its amended complaint, Plaintiff asserts a claim for promissory estoppel, pursuant to O.C.G.A. § 13-3-44(a). (Am. Compl. ¶¶ 31-35.) In Georgia, the elements of promissory estoppel are as follows:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs

23

changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

Mariner Healthcare, Inc. v. Foster, 280 Ga. App. 406, 412 (2006); see also O.C.G.A. § 13-3-44(a) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). "An essential element of a claim of promissory estoppel is that the defendant made certain promises to the plaintiff. And, while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." Mooney v. Mooney, 245 Ga. App. 780, 783 (2000).

According to Plaintiff, "Defendants made representations and promises to the Plaintiff during the admission of its insured for medical care and treatment that it would pay for [Mr. Kossum's] medical services." (Am. Compl. ¶ 33.) Plaintiff contends that it relied on these promises to its detriment. (Id. ¶ 34.) Defendants argue in their motion for summary judgment that Plaintiff's promissory estoppel claim fails because, based upon the

evidence presented, "there is no promise to be enforced." (Doc. no. 33 at 19.) The Court agrees.

Since Plaintiff never precisely identifies the "promise or representation" that is the foundation of its promissory estoppel claim (see doc. no. 36 at 21), the Court can only speculate as to what evidence Plaintiff believes speaks to this claim.[14] The Court presumes that Plaintiff believes a promise arose due to the "transactional conduct of these parties." (Id. at 14.) For instance, under the heading of *quantum meruit*, Plaintiff notes that AmFed partially reimbursed Plaintiff for the air ambulance service, assigned a case manager to assist in Mr. Kossum's treatment, attended meetings and conferences to discuss fees,[15] provided medical utilization

_____

[14] The Court recognizes that Plaintiff alleges in its response to Defendants' motion for summary judgment that "Plaintiff and Defendants formulated a treatment plan for Mr. Kossum that included limited use of the Mississippi Medical Fee Schedule as it pertained to CPT coding, billing and pricing of medical services as an out-of-state provider. Accordingly, JMS was to be reimbursed under the usual and reasonable rate standard contained in the MMFS." (Doc. no. 36 at 3.) Plaintiff, however, fails to provide any evidence of the alleged agreement. The affidavits cited in support of the above proposition fail to note a single express representation made by Defendants or their employees regarding such an agreement or promise. Conclusory allegations, without more, are insufficient to withstand a motion for summary judgment. See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1998).

[15] Plaintiff provides no evidence regarding these meetings, so the Court, once again, can only presume that the meetings Plaintiff refers to are those mentioned by AmFed's Claims Manager, Rebecca Hillhouse. (Hillhouse Affidavit ¶ 14.) Hillhouse's testimony actually favors Defendants' position, because, while the meeting and conference were conducted for the purpose of discussing fees, the undisputed evidence shows the parties never came to any agreement. (Id.)

25

forms, and partially paid the bills sent by Plaintiff. (Id. at 13.) Plaintiff, however, fails to identify a single promise or representation made by Defendants to pay for the medical services provided to Mr. Kossum. Moreover, Plaintiffs cannot point to a single piece of evidence showing that Defendants promised to pay the "usual, reasonable and customary rate under the CPT Rules." (Id. at 3.) In fact, there is some evidence that Defendants represented quite the opposite. For example, the "medical utilization forms" provided by Defendant AmFed to Plaintiff (Bennett Aff. ¶ 7) state the following: "[t]his opinion is based on physician review of provided medical records and does not guarantee coverage or payment of claims. Compensability is the decision of the claims adjuster." (Hillhouse Aff. ¶ 15.)

Even if the evidence could be construed to show that Defendants "made representations and promises to the Plaintiff during the admission of its insured for medical care and treatment that it would pay for [Mr. Kossum's] medical services" (Am. Compl. ¶ 33), the Court would still maintain serious concerns regarding the reasonableness of Plaintiff's reliance. See Agricommodities, Inc. v. J.D. Heiskell & Co., Inc., 297 Ga. App. 210, 214 (2009) (upholding grant of summary judgment in favor of defendant

on promissory estoppel claim because plaintiff's reliance was unreasonable as a matter of law in part due to fact that trade confirmation specifically provided that it was "subject to credit approval"); see also, Poindexter v. Am. Bd. of Surgery, Inc., 911 F. Supp. 1510, 1523 (N.D. Ga. 1994) (granting summary judgment because reliance on promise was not reasonable). The Court seriously questions the reasonableness in assuming that a workers' compensation insurer or employer's ambiguous "promise to pay" for medical services provided to a third party amounts to anything more than a promise to pay what is required pursuant to workers' compensation law, without an express agreement to the contrary. These reasonableness concerns are further amplified by the fact that it appears that Plaintiff is alleging that its reliance is based upon a course of conduct rather than any explicit promise or representation.

Furthermore, even assuming, *arguendo*, that Defendants made a promise or promises, there is no evidence setting forth the substance of the promise or promises with any degree of particularity. As stated above, for purposes of promissory estoppel, "while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to

enforce the commitment." Mooney, 245 Ga. App. at 783. The evidence fails to show what services Defendants promised to pay for or how much Defendants promised to pay; to the extent any promise could be inferred, it would lack "sufficient particularity to enforce [a] commitment." Id.

The Court also notes that promissory estoppel, like quantum meruit, is an "equitable doctrine designed to prevent the intricacies and details of the law from frustrating the ends of justice," Rental Equip. Group, LLC v. MACI, LLC, 263 Ga. App. 155, 158 (2003), and, under Georgia law, in order to succeed on such a claim, a plaintiff must show that "injustice can only be avoided by enforcement of the promise." Mariner, 280 Ga. App. at 412. With respect to this element of promissory estoppel, the Court finds that, based upon the evidence presented, there is no injustice to avoid here. Plaintiff has been paid more than what would have been required under either Mississippi's or Georgia's workers' compensation medical fee schedules. See U.S. Foodservice, Inc. v. Bartow County Bank, 300 Ga. App. 519, 522 (2009) ("[Plaintiff's] promissory estoppel argument fails because there is no evidence that injustice can be avoided only by the enforcement of the promise.").

Based on the foregoing, Defendants' Motion for Summary Judgment as to the promissory estoppel claim is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (doc. no. 34) is **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants. The Clerk shall **TERMINATE** all deadlines and pending motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 31ST day of March, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA